UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

NOT FOR PUBLICATION

Loventino Cassadean,

MEMORANDUM & ORDER

        Petitioner

19-cv-4067 (ERK)

– against –

Jamie LaManna,

        Respondent.

KORMAN, *J.*:

In the early morning of September 3, 2012, petitioner Loventino Cassadean stabbed his wife multiple times, poured gasoline on the bed, and burned her body. When a police officer arrived, petitioner admitted he killed his wife and committed the arson because she had taken their child from him. ECF No. 5-10 at 11. Petitioner's wife had moved their child to Guyana after petitioner was indicted for sexually abusing his wife's teenage sister. ECF No. 10-1 at 3. After being read his *Miranda* rights, petitioner reiterated at an interview at the police station that he had killed his wife. ECF No. 5-10 at 86–88.

Petitioner pled guilty to one count of murder in the second degree. ECF No. 5-11 at 11. Petitioner's counsel explained on the record that she had sought to negotiate a manslaughter plea but that the district attorney had insisted he plead to murder. *Id.* at 3. His counsel also confirmed that petitioner would resolve the earlier

1

sexual abuse charges by pleading guilty to a misdemeanor charge of endangering the welfare of a child (rather than the original felony charge of criminal sexual act in the third degree). *Id.* at 3–4; *see* ECF No. 10-1 at 3.

At the plea hearing, petitioner stated under oath that he wanted to plead guilty "because, you know, I know I did a horrible thing and I want the family to have justice and conclusion." ECF No. 5-11 at 6. Petitioner confirmed that he was satisfied with his attorney's representation and understood the rights he was giving up. *Id.* at 6–7. The court promised petitioner that in exchange for his plea, it would sentence him to twenty years to life; if he were convicted of murder at trial, by contrast, he could face a sentence of twenty-five years to life. *Id.* at 9.

Petitioner confirmed that he stabbed his wife with a knife "numerous" times. *Id.* at 10. When asked whether it was his intention to kill her, petitioner's counsel asked for "one moment." *Id.* After taking that break, petitioner said: "Your Honor, I did kill my wife. I did. But at the very moment, very honestly," at which point his counsel asked to confer with him again. *Id.* Petitioner and his counsel conferred, and his counsel asked the judge if they could approach, at which point a discussion was held off the record.

Back on the record, petitioner's counsel said that, based on that conversation, she had explained to petitioner that the court was going to ask "if the purpose of stabbing her was to kill her and that if he answers yes to that, we will go forward

2

with the plea, otherwise, he does not have to go forward with the plea. I believe he wants to go forward with the plea, your Honor." ECF No. 5-11 at 11. Petitioner then confirmed that his purpose when stabbing his wife was to kill her and that he wished to plead guilty. *Id*. The court accepted the plea and found that it had been entered voluntarily, knowingly and intelligently. *Id*.

Before sentencing, petitioner moved to withdraw his plea on the ground that his counsel had impeded his effort to assert the defense of extreme emotional distress at the plea hearing. *See* ECF No. 5-13. The court denied the motion, finding that petitioner's counsel had "negotiated a favorable plea for the defendant." ECF No. 5-16 at 3. Moreover, the court observed that petitioner had repeatedly confirmed during his plea colloquy that he consulted with counsel and was satisfied with the representation. *Id*. It also held that "[t]he substitution of the word 'intent' with the word 'purpose' in the colloquy does not implicate the assertion of a defense by the defendant. As such there was no need for the court to expand the plea colloquy and engage in further inquiry with the defendant regarding any possible defenses and the waiver of such defenses." *Id*. at 4. The court imposed an indeterminate sentence of twenty years to life. ECF No. 5-12 at 14.

The Appellate Division affirmed on direct appeal. *People v. Cassadean*, 160 A.D.3d 655 (2d Dep't 2018). It held that the record demonstrated the guilty plea was entered voluntarily, knowingly, and intelligently. *Id*. at 656. The court held that

the trial court "was not required to inquire into a possible affirmative defense, since nothing in the record suggested that an affirmative defense might exist." *Id.* It also rejected petitioner's argument that the plea was involuntary because he had allegedly not been advised that his parental rights could be terminated upon his conviction. *Id.* The court held that this argument was unpreserved for appellate review, as petitioner "did not move to withdraw his plea on this ground prior to sentencing." *Id.* The Court of Appeals denied leave to appeal. ECF No. 5-33.

Petitioner's federal habeas petition seeks relief on four grounds. First, he claims that he acted under extreme emotional distress because his son had been taken away from him and that his attorney failed to pursue that as a defense. ECF No. 1 at 11. Second, he claims he was denied due process and protection from self-incrimination because his first attorney stopped him from saying at the plea that it was not his intent to kill his wife and coerced him into pleading guilty. *Id.* at 13. Third, he argues that his counsel provided inadequate assistance because she failed to develop a record, investigate, or request hearings. *Id.* Finally, he argues that his counsel was ineffective because her "sole purpose was to facilitate a conviction for the DA" because she was a former assistant district attorney. *Id.* Petitioner argues that counsel accordingly failed to pursue an effective defense, including based on his mental health or emotional disturbance relating to his son.

4

The state moved to dismiss the habeas petition on the ground that none of these arguments had been exhausted in state-court proceedings. *See* ECF No. 5. I appointed counsel for petitioner to pursue his unexhausted claims in state court, and petitioner then filed a motion to vacate his conviction under CPL § 440.10. *See* ECF No. 10. The trial court denied relief. *See* ECF No. 10-3. It first held that petitioner's claim that he had a valid legal defense (that should have been explored by the court at the plea) was procedurally barred, both because it had been rejected on direct appeal as well as for the reasons stated in the denial of the motion to withdraw the plea. *Id.* at 5. The court again held that the plea was entered voluntarily, knowingly, and intelligently and that the petitioner's desire at his plea hearing to use the word "purpose" rather than "intent" did not implicate a viable defense. *Id.* The court also held that the psychiatric evidence offered by petitioner should have been included in the prior motion to withdraw the plea. *Id.* Regardless, it held that defendant had not shown he had a viable defense based on extreme emotional disturbance. *Id.*

The court also rejected the argument that petitioner should have been advised that his parental rights would be terminated upon a plea of guilty. ECF No. 10-3 at 6. It rejected the claim as procedurally barred because it could have been raised in the motion to withdraw the plea. *Id.* The court also rejected this claim on the merits, both because the termination of his parental rights was collateral to this proceeding

5

and also because petitioner had been advised that his parental rights would likely be terminated by a judge presiding over his case in family court. *Id.*

The court likewise rejected petitioner's claim of ineffective assistance of counsel. It held that he failed to meet his burden to show (1) that he was not properly advised of a legal defense, (2) that plea counsel's performance was not meaningful, or (3) that the outcome would have been different but for plea counsel's alleged errors. ECF No. 10-3 at 6. The court held that, on the contrary, the record showed that his counsel "vigorously explored" a defense of extreme emotional disturbance, that such a defense was unlikely to be successful, that the defendant made the decision to plead guilty and enter into a favorable plea agreement, and that he knowingly, intelligently, and voluntarily pleaded guilty. *Id.* at 6–7.

The Appellate Division denied leave to appeal. *See* ECF No. 11.

## DISCUSSION

A federal court may grant a writ of habeas corpus to a prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). When the petitioner's claims have been rejected on the merits by a state court, the court may grant the writ only if that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or if the decision "was based on an unreasonable determination of the facts in light

6

of the evidence presented in the State court proceeding." *Id.* § 2254(d).

Federal court review under the "unreasonable application" clause is "extremely deferential: 'a state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision.'" *Chrysler v. Guiney*, 806 F.3d 104, 118 (2d Cir. 2015) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). If the state court does not provide reasons for its decision, a federal habeas court must examine "what arguments or theories . . . could have supported" that decision and whether reasonable judges "could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Harrington*, 562 U.S. at 102. Federal-court review under the unreasonable application prong "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

Petitioner first argues that he should not have been convicted of murder because he suffered from extreme emotional distress. That claim is rejected for multiple reasons. To the extent that petitioner is arguing that he was actually innocent of the crime of murder (because he should have been liable only for manslaughter), his claim fails because the Supreme Court has not finally resolved whether there is a federal constitutional right to be released on proof of actual innocence. As Chief Justice Roberts has observed: "[w]hether such a federal right

7

exists is an open question. We have struggled with it over the years, in some cases assuming, *arguendo*, that it exists while also noting the difficult questions such a right would pose and the high standard any claimant would have to meet." *Dist. Att'y's Off. v. Osborne*, 557 U.S. 52, 71 (2009). Petitioner therefore cannot obtain relief on that basis. *See Hyman v. Brown*, 927 F.3d 639, 656 (2d Cir. 2019).

Moreover, as the Second Circuit has held, "[a] defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea." *United States v. Coffin*, 76 F.3d 494, 497 (2d Cir. 1996); *see also Brown v. Lee*, 2017 WL 4233034, at *5 (E.D.N.Y. Sept. 25, 2017) (collecting cases). Rather, he can only challenge "whether the guilty plea had been made intelligently and voluntarily with the advice of competent counsel." *Coffin*, 76 F.3d at 497–98; *see Brown*, 2017 WL 4233034, at *5.

Petitioner's argument that his plea was not entered knowingly, voluntarily, and intelligently is meritless. He argues that he was coerced into pleading guilty by his attorney, who prevented him from telling the judge that it was not his "intent" to kill his wife. The Appellate Division rejected this claim on direct appeal, concluding that "the record demonstrates that his plea of guilty was entered voluntarily, knowingly, and intelligently." *Cassadean*, 160 A.D.3d at 656. It also held that the trial court "was not required to inquire into a possible affirmative defense, since

nothing in the record suggested that an affirmative defense might exist." *Id.* The Appellate Division did not unreasonably apply federal law in coming to this conclusion. As Judge Friendly observed, "due process does not require that a defendant be advised of every basis on which he might escape or receive a lesser punishment for an offense that he has committed. The distinction [between an element of the offense and a defense] is particularly strong where, as is the case here, the burden of persuasion with respect to the appropriate defense rests on the defendant." *Mitchell v. Scully*, 746 F.2d 951, 956–57 (2d Cir. 1984). Furthermore, as detailed above, petitioner repeatedly explained on the record that he wished to plead guilty of his own free will after going through a detailed colloquy with the trial court. "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). "[I]n light of the statements contained in the record, petitioner's conclusory allegations that he was coerced into pleading guilty do not provide a basis for habeas relief." *Washington v. Tynon*, 2018 WL 6168014, at *11 (E.D.N.Y. Nov. 20, 2018) (Bianco, *J.*). And, for the reasons explained below, petitioner's argument that his counsel coerced him by interrupting him during the allocution is meritless.

Petitioner has also failed to show that the state court unreasonably rejected his claim of ineffective assistance of plea counsel. Under *Strickland v. Washington*, 466 U.S. 668 (1984), in order to demonstrate ineffective assistance of counsel in

9

violation of the Sixth Amendment, petitioner must show (1) that his counsel's representation "fell below an objective standard of reasonableness," and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694. Under the "unreasonable application" clause of § 2254(d), "[b]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Shinn v. Kayer*, 141 S. Ct. 517, 523 (2020) (*per curiam*) (internal quotation omitted). "The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105.

Petitioner's claim that his attorney failed to adequately investigate or pursue certain defenses is barred because he pled guilty, which forecloses "independent claims relating to events occurring prior to the entry of the guilty plea." *Coffin*, 76 F.3d at 497. Nor has he demonstrated that the state court unreasonably rejected the claim that his counsel performed inadequately at the plea hearing. The state court on collateral review found that petitioner had been informed of the likely termination of his parental rights by a family court judge. His claim that his attorney should have informed him of what he already knew is therefore meritless. *Morchik v. United States*, 2019 WL 1547010, at *7 (E.D.N.Y. Apr. 9, 2019).

Furthermore, petitioner's counsel confirmed on the record that she had sought

10

a manslaughter plea but had been rebuffed by the district attorney. Indeed, she requested and received court funds for petitioner to be examined by a psychiatrist to pursue a defense related to petitioner's mental health, and presented those findings to the district attorney in pursuit of a manslaughter plea. *See* ECF Nos. 5-1, 5-2, 5-3, 5-4, 5-11 at 3. Petitioner's counsel was therefore clearly aware of the affirmative defense of extreme emotional disturbance, on which petitioner would bear the burden at trial. *See* N.Y. Penal Law § 125.25(1)(a)(i); *id.* § 25.00(2). Petitioner has therefore given no reason to believe that his counsel's representation "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. To the contrary, she pursued his most obvious defense. Moreover, the plea deal obtained by petitioner's counsel also reduced his sentencing exposure and allowed him to plead guilty to a misdemeanor rather than a felony for the sexual abuse charge involving petitioner's wife's sister.

Petitioner's claim that his counsel stopped him from pursuing a defense at his plea is likewise meritless. The state court reasonably concluded that there was no material difference between petitioner's desire to allocute that it was his "purpose" to kill his wife rather than his "intent." *See People v. Steinberg*, 79 N.Y.2d 673, 681 (1992) ("if intent is the governing *mens rea* (as it is here), the focus is on the defendant's conscious aim or purpose—the objective—in doing particular acts"). Accordingly, petitioner's counsel was not ineffective for failing to pursue this

meritless distinction as a defense or for advising petitioner not to pursue it further. *Aparicio v. Artuz*, 269 F.3d 78, 100 (2d Cir. 2001). And, as discussed above, petitioner's counsel was fully aware of and pursued the potential defense of extreme emotional disturbance. She had also sought a manslaughter plea that would have taken that defense into account. After those efforts failed, however, the court repeatedly inquired whether petitioner wanted to plead guilty to second-degree murder, and he repeatedly confirmed that he did.

Finally, petitioner's argument that his counsel was ineffective because she had previously worked as an assistant district attorney—and therefore that her "sole purpose was to facilitate a conviction"—is entirely without merit. ECF No. 1 at 13. Many of the finest defense lawyers are former prosecutors. The state court concluded that petitioner's counsel represented him "vigorously," and his counsel confirmed on the record that she had sought an even more favorable plea but had been rebuffed. ECF Nos. 5-11 at 3; 10-3 at 7. Petitioner's belated dissatisfaction with his decision to plead guilty does not come close to establishing that his counsel was ineffective, nor that the state court unreasonably applied federal law by rejecting his claim.

## CONCLUSION

The petition for writ of habeas corpus is denied. I also decline to issue a certificate of appealability.

**SO ORDERED.**

Brooklyn, New York
July 6, 2021

*Edward R. Korman*
Edward R. Korman
United States District Judge